AARON P. A. DE GRAFF, Appellant, *v.* THE NEW YORK
CENTRAL AND HUDSON RIVER RAILROAD COMPANY,
Respondent.

76  125,<br>140  453<br>76  125<br>164  496

An employe, in the service of a railroad corporation, assumes the risks and
dangers incident to the business in which he is engaged, and while the
company is bound to furnish suitable and safe machinery and appliances
for his use, having done so, it is not liable for an injury resulting from
their breaking or failure, unless it is shown that the corporation has
been guilty of negligence in regard thereto.

The fact that the employe is a minor does not, if he is of age sufficient and
is competent for the service in which he is employed, affect the duty or
liability of the corporation in this particular; the risks are an element
of the employment, and the employe cannot claim, on account of infancy,
to be relieved from the consequence of such risks.

Plaintiff was in the employ of defendant as a brakeman on a freight train;
in applying a brake the chain broke, and plaintiff was thrown from the
car and injured. In an action to recover damages for the injury, the
evidence was to the effect that a chain of the size of the one in question,
if of the best materials, would bear a strain of six times the amount of
power that could be applied by plaintiff. Plaintiff had used the same
brake upon the trip three times previous to the accident, and it had
proved efficient in controlling the train. The cause of the fracture or
nature of the defect, if any, in the chain, did not appear; there was no
evidence that the chain was not perfect when it was put on, or that
proper care had not been exercised by defendant's servants in making
examination, or as to whether the cause could have been discovered by
the usual and ordinary means. It appeared that such chains frequently
broke, but there was no evidence that an injury would ordinarily, or
did ever, result therefrom. Defendant's inspectors were in the habit
of examining the brake chains to see if they were in their place and
apparently sound, but did not test their strength. *Held*, that the evi-
dence justified a finding that there was some defect in the chain, but
not that it was defective when put in, or that it could have been dis-
covered by the exercise of ordinary care, or that such care was not
used; and that, therefore, a refusal to nonsuit was error.

*Webb* v. *Rennie* (4 Fost. & Fin. N. P. R., 608), distinguished.

(Argued January 16, 1879; decided January 28, 1879.)

APPEAL from order of the General Term of the Supreme
Court, in the fourth judicial department, reversing a judg-
ment in favor of plaintiff, entered upon a verdict, and grant-
ing a new trial.

This action was brought to recover damages for injuries alleged to have been sustained by plaintiff through defendant's negligence.

Plaintiff, a young man, seventeen years of age, was in the employ of defendant, in 1870, as a brakeman. On April 20, 1870, he was acting as brakeman upon a freight train, consisting of thirty cars, running from West Albany to Syracuse. Before reaching the water station at Yosts, plaintiff applied the brake on one of the cars, and succeeded in stopping the train; on approaching that station he again applied the same brake, when the chain broke and he was thrown from the car and injured.

The further facts appearing on the trial are set forth sufficiently in the opinion. At the close of plaintiff's evidence, and at the close of all the evidence, defendant's counsel moved for a nonsuit, on the ground that there was no evidence of negligence on the part of defendant. The motion was denied, and said counsel duly excepted.

*Scott Lord*, for appellant. In order to relieve defendant from liability it must appear that the accident was caused solely by the negligence of plaintiff's co-employes. (*Flike* v. *B. and A. R. R. Co.*, 53 N. Y., 533; S. & R. on Neg., pp. 9, 10, § 89.) The question whether the chain was defective was one for the jury. (*Coughtry* v. *Globe Wool. Co.*, 56 N. Y., 128, 129; *Kirkpatrick* v. *N. Y. C. and H. R. R. R. Co.*, 6 N. Y. W. D., 106; *Cook* v. *N. Y. C. R. R. Co.*, 1 Abb. Ct. of App. D., 432; *Bernhard* v. *Rens. and S. R. R. Co.*, id., 131; *Weber* v. *N. Y. C. and H. R. R. R. Co.*, 58 N. Y., 451; *King* v. *N. Y. C. and H. R. R. Co.*, N. Y. W. D., 500.) Plaintiff being a minor the law as to master and servant has no application to this case. (*Holmes* v. *Clark*, 7 H. & N. [Exch.], 944; *Wilson* v. *Merry*, H. L. R., July, 1868; *Warner* v. *Erie R. R.*, 39 N. Y., 479; *Laning* v. *N. Y. C.*, 49 id., 532; *Flike* v. *B. and A. R. R. Co.*, 53 id., 555; *Besel* v. *B. and A. R. R. Co.*, 70 id., 173; *Spellman* v. *Fisher Iron Co.*, 56 Barb., 155; *Farwell* v. *B. and W.*

*R. R. Co.*, 4 Metc., 49; *Albro* v. *A. C. Co.*, 6 Cush., 75; *Snow* v. *Housatonic R. R.*, 8 Al., 441; 1 Redfield on Railways, 549, n. 15; *Dixon* v. *Rankin*, 1 Am. R. C., 569; Bingham on Infancy, 49–60; Tyler on Infancy, 50; Story on Contracts, § 13; 1 Parsons on Con., 243; 1 Blackstone, 465; *Rodgers* v. *Kruger*, 7 J. R., 557; *Farnam* v. *Atkins*, 2 Kib. R., 623.)

*J. Thomas Spriggs*, for respondent. There was an entire failure to show negligence on the part of defendant or its agents in furnishing or knowingly using defective cars, brakes or other materials, and in employing unfit persons to inspect and repair, and the plaintiff should, therefore, have been nonsuited. (Redfield on Regs., § 131; *Faulkner* v. *Erie R'y*, 49 Barb., 324–327–328–329; *Warner* v. *Erie R'y*, 39 N. Y. [12 Tiff.], 468–470; *Wright* v. *N. Y. C. R. R. R. Co.*, 25 N. Y., 562; *Toomey* v. *R'y Co.*, 3 Com. B., N. S. [91 E. C. L. R., 1], 146–149; *Cotton* v. *Wood*, 8 C. B. N. S. [98 id.], 568–570; *Morgan* v. *R'y Co.*, 5 B. & S. [117 id.], 736–740; *Wonder* v. *B. and O. R'y Co.*, 3 Am. Rep., 143, 147n; *Riley* v. *Baxendale*, 6 Hurls & Nonn. Exch., 445–447–448; *Brown* v. *Acc. Cotton Co.*, 3 Hurls & Colt. Exch., 511–518–519–520; *Redhead* v. *R'y Co.*, 4 L. R. Q. B., 379; *Welfare* v. *L. and B. R'y Co.*, id., 692–695–696; *Laning* v. *N. Y. C. R. R. Co.*, 49 N. Y., 521–532–533; *Rose* v. *B. and Albany R. R. Co.*, 58 id., 217–219; *Baulee* v. *N. Y. and H. R. R. Co.*, 59 id., 355–359–365–366; *Curtis* v. *R. and S. R. R. Co*, 18 id., 525–527–531; *Reed* v. *N. Y. C. R. R. Co.*, 56 Barb., 493–495; *Moore* v. *Goedel*, 34 N. Y., 527, 531.) Defendant having furnished the chain plaintiff took the risk of its endurance. (*Laning* v. *N. Y. C. R. R. Co.*, 49 N. Y., 521; *Wonder* v. *B. and O. R. R. Co.*, 3 Am. R., 143.) Plaintiff being an employe assumed all risks of the business. (*Laning* v. *R. R. Co.*, 49 N. Y., 521, 532; *Wright* v. *R. R. Co.*, 25 id., 526; *Wonder* v. *R. R.*, 3 Am. R., 143; *De Graff* v. *R. R.*, 3 N. Y. S. C. [T. & C.], 256; *Toomey* v. *R'y Co.*, 3 C. B. N. S. [91 E. C. L.], 146; *Cotton* v. *Wood*,

8 id. [98 id.], 568; *Morgan* v. *R'y Co.*, 5 B. & S. [117 id.], 736; *Brown* v. *Cotton Co.*, 3 Hurls & Colt. Exch., 511; *Welfare* v. *R'y Co.*, 4 L. R. [Q. B.], 692; *Warner* v. *Erie R'y Co.*, 39 N. Y., 468, 470; *Gibson* v. *Erie R'y Co.*, 63 id., 449, 452 ) There being no evidence of negligence there was no question for the jury. (*Toomey* v. *R'y Co.*, 91 E. C. L., 146; *Cotton* v. *Wood*, 98 id., 568, 570; *Morgan* v. *R'y Co.*, 117 id., 736–740; *Brown* v. *Cotton Co.*, 3 Hurls. & Colt., 511–518–519; *Welfare* v. *R'y Co.*, 4 L. R. [2 B.], 692–695–696; *Wright* v. *R. R.*, 25 N. Y., 562 *Gonzales* v. *R. R.*, 38 id., 440, 442; *Rose* v. *R. R.*, 58 id., 217–222; *Baulec* v. *R. R.*, 59 id., 356–365–366.)

CHURCH, Ch. J.    The propositions of law upon which a verdict might be predicated for the plaintiff, were I think correctly and accurately stated by the learned judge at the trial. These were first that there must have been a defect in the brake chain, which broke, by reason of which the plaintiff was thrown from the car and injured, and second if that was found, that the defendant must have been guilty of negligence in respect to it which might be established, by showing either that the defendant knew of such defect, or as some of the authorities express it, ought to have known it, or as more accurately expressed in others, that the defendant failed to exercise reasonable care and diligence to examine and ascertain whether the chain was defective, and that the exercise of such care, would have discovered it. The judge in charging said : " Was it such a defect that might, by the use of ordinary means, and ordinary care, have been ascertained." The more difficult question is whether there was evidence which would justify the jury in finding for the plaintiff upon both of these propositions.

The evidence of two experts was relied upon to prove that the chain was defective. They testified that a chain of the size specified, made of the best material, would bear a strain of 12,000 pounds, and six times the amount of power applied, that plaintiff could apply about 200 pounds power

producing a strain of only 1200 pounds. From this evidence, and the fact that the chain did break, it was submitted to the jury to find that it was in consequence of some defect. Although this evidence is far from conclusive, I am inclined to think that the jury would be justified in coming to the conclusion that there was some weakness or defect in the chain. The amount of strain spoken of is contemplated to be applied when the chain is new, either by hydraulic pressure, or a dead weight, and not in the mode in which the chain was used on a car. Its use would naturally weaken its power of resistance, and there is no obligation to keep it up to its maximum strength, and hence the breaking might have been from natural and unforeseen causes. But these were considerations for the jury.

Upon the next proposition that the exercise of ordinary care would have discovered the defect, and that the defendant neglected to exercise such care, a careful examination has failed to satisfy me, that the evidence was sufficient to warrant a verdict. In the first place, assuming a defect, there is no evidence what it was or the nature of it. The car was in a train going west, and it does not appear that any one ever saw the chain afterwards, except the person who took the plaintiff's place after the accident, and he only looked at it with a lantern at a station, and saw that it was broken. There is some evidence, although slight, that the car did not belong to the defendant. There was an entire absence of evidence, as to the nature and character of the defect, or the cause of the breaking. We may imagine several causes, *first*, from an original defect in the iron, or *second*, in its manufacture, or *third*, by reason of weakness, and ordinary decay by use, or *fourth*, by getting misplaced on the trip on which the accident occurred. There is no evidence that ordinary care and observation would have discovered all, and either of these defects if they had existed; and they must have so found, as they could not have singled out a defect which ordinary care would have discovered, because the particular defect was entirely unknown. In the

next place there was a failure of evidence to show that the defendant, its servants, or agents, did not exercise reasonable care, or make suitable and proper examination.

It appears that the train was made up at West Albany, that the defendant employs six men in the day time, and six at night, to inspect freight cars, and there was no evidence what examination was made by these persons of this car, or its brake-chain, before it started on the trip. The only evidence bearing upon the question at all, was, that of the train dispatcher at West Albany, called by the plaintiff, who stated in effect that the inspectors were in the habit of examining the chains to see if they were in their place, and apparently sound, but did not test their strength.

The learned counsel for the plaintiff insists that the jury were justified in finding that proper care required that these chains should be detached at intervals, and their strength tested by hydraulic pressure, or dead weight, or by some other mode, which would be effectual for that purpose. There was no evidence that this was not done, except that it was not done at West Albany, but it seems to me that such a requirement is unreasonable, and unnecessary, either to insure the safety of the public or employes.

Railroad corporations should be held to a high degree of care and responsibility ; but there is a point beyond which the requirements would be regarded as unreasonable and oppressive, and would in effect make them insurers against all accidents or injuries arising therefrom. As a general rule the degree of vigilance required is measured by the dangers to be apprehended or avoided. It does not appear to be necessary that the full strength of these chains should be kept up. That would involve a test on every trip, and a possible renewal on every trip. Again, on a train of thirty cars, each one having a brake, it would not seem to be indispensable, that every brake-chain should be perfect, as but a few of that number could or would be used in controlling the train ; and again, it does not appear that the breaking of a chain, would ordinarily result in such an accident. Such

chains frequently break, as the evidence shows, but there is no evidence that an injury ever resulted from such breaking, nor that it would ordinarily do so.

Employes assume the risks and dangers incident to the business in which they engage, and while the principal is bound to furnish suitable and safe machinery and appliances for the use of employes ; if he does so he is not liable for an injury resulting from the breaking or failure of such machinery, unless it is shown that the principal has been guilty of negligence in respect to it, either by acts of omission or commission.

I have been unable to find any evidence that this chain was not perfect when it was put on, nor that proper care was not exercised in examination by the servants of the company, nor what was the cause of its failure, or whether such cause could have been discovered by the usual and ordinary means.

It is argued that the jury might have found negligence, from the fact that there was some defect, but negligence is not to be presumed, and it is apparent that the chain might have become weak from use without being discoverable from any ordinary examination, and it is not improbable that this was the condition of the chain, from the fact that on three occasions on this trip, before the accident, it had been used, and proved efficient in controlling the train.    It broke when used the fourth time from a cause unknown ; and I think that the evidence is not sufficient to charge the defendant with a knowledge of such weakness, or any negligence or omission to examine.

I have examined all the authorities cited by the counsel for the plaintiff, and neither of them go the length of upholding this verdict.    The strongest case cited, and the one relied upon, was a *nisi prius* case.  (*Webb* v. *Rennie*, 4 Fost. & Fin. [N. P. R.], 608, before Cockburn, Ch. J.) There the injury occurred from the fall of a scaffold pole which had stood in the ground two years without any examination, and became rotten.    The distinction between the facts proved in that case and this is marked.    The particular defect

was proved, viz. : the rottenness of that part of the pole standing in the ground.   No examination had been made in the two years, and an examination would have discovered the defect.   It was submitted to the jury, whether it was not left in the ground an unreasonable time, without examination, and if they so found, they might find negligence.   Here nearly every element proved in that case is wanting.   It was not proved what the defect was ; it was not proved that a proper examination had not been made, nor that an examination would have discovered the defect which caused the breaking.

The fact that the plaintiff was a minor I do not think affects the question.   There are many expressions of judges, that the assumption by employes of the risks incident to the business, and the negligence of co-servants arises from an implied agreement to that effect.   In others the modified liabilities of principals to employes, are founded upon considerations of public policy.   (*Flike Case*, 53 N. Y., 549.)   At all events it is an element of the employment.   If a minor engages to work, the risks of the business are incident to the work.   He cannot claim on account of infancy to be relieved from the consequences of such risks.   He might as well claim to enforce the contract for his wages without performing any service.   If a child of unsuitable age should be employed in a hazardous business, or exposed to unsuitable risks, a different question might be presented.   Here no question is made but that the plaintiff was competent for the service which he was employed to render, and no negligence is imputed to the defendant for employing him on that account.   So in considering the question of contributory negligence, the age, and experience of the plaintiff, is often a material consideration, but there is no such point involved in this case.

The case of *King* v. *R. R. Co.* (9 Cush., 112), is an authority against this point.   It is said that the employment of the plaintiff in that case was with the consent of his father and therefore lawful.   In this case it does not appear whether the father consented, or not, or whether the plaintiff had a father, but

the employment was not unlawful, with, or without consent. The father might collect wages, or exercise control over the minor, but it was not unlawful to engage in service, and so long as he continued, he was subject to the incidental obligations of the position.

This accident was an unfortunate one, and the plaintiff received a severe injury in the service of the defendant without any apparent fault of his, and while it is a case which should commend itself to the generosity of the employer, we think it cannot be sustained without violating established principles of law.

The order of the General Term must be affirmed, and judgment absolute ordered for the defendant.

All concur, except RAPALLO, J., not voting.

Order affirmed, and judgment accordingly.