PATRICK HART, Respondent, v. ELKAN NAUMBURG et al., Appellants.

In an action to recover damages for injuries received by plaintiff, an employe of defendants, while riding upon a freight elevator in defendants' building, these facts appeared: The elevator and its equipments were of the most approved kind and pattern for the purpose to which it was applied; it was carefully looked after and inspected by the defendants and the regular inspector of the manufacturer who furnished it; the elevator had been in operation for six years and no previous accident had happened. It had been thoroughly inspected three months before the accident in question, and was then found to be in perfect condition. The accident was alleged to have been caused by a defect in the winding of the chains supporting the elevator upon the drum, due to the manner in which the elevator was operated and used. It did not appear that defendants had notice of any defect prior to the accident. *Held*, that

the evidence did not justify a finding of negligence on the part of defendants.

Defendants had long before the accident caused a notice to be posted near the elevator forbidding all persons from riding thereon; the engineer at one time called plaintiff's attention to this and refused to allow him to ride thereon; he thereupon obtained permission from one of defendants. *Held*, that conceding there was negligence on defendants' part, as it was apparent that plaintiff had the same means and opportunities for ascertaining defects that defendants had, and in fact better, he was chargeable with contributory negligence.

*Hart* v. *Naumburg* (50 Hun, 392), reversed.

(Argued October 7, 1890; decided October 21, 1890.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made December 21, 1888, which affirmed a judgment in favor of plaintiff entered upon a verdict and affirmed an order denying a motion for a new trial:

The following is the opinion in full:

"The defendants are wholesale clothing merchants in the city of New York, and in the large building which they occupied there were three elevators, one for passengers, one for both passengers and freight and the other, the one in question, an Otis platform sidewalk freight elevator. On the 23d of March, 1886, the plaintiff, then and for nineteen years previous, a porter in defendants' employ, was seriously injured while riding on the platform of this elevator, and this injury he claims was chargeable to the defendants' negligence. He brought this action to recover for the injuries thus sustained, and on the trial the jury returned a verdict in his favor, and the judgment entered thereon has been affirmed by the General Term.

"The elevator in question had been in operation and use in the building since 1880, and this was the first accident that had occurred upon it. During this period of six years the plaintiff had been accustomed to ride upon it whenever he chose. It run from the sub-basement to the level of the sidewalk on Mercer street, and was used for receiving and delivering goods. The evidence shows that at least 250 of precisely the same pattern and kind of elevators were in use in the city of New York. It was constantly looked after by one

of the defendants, who rode upon it frequently for the purpose of seeing that everything connected with it was in good order, and every three months it was inspected, by direction of defendants, by one of the inspectors of the manufacturer employed for that purpose. It had been thoroughly inspected less then three months before the accident, and was then found to be in perfect condition.

" There is no proof in the record that any defect in the elevator or its equipments was ever brought to the notice of the defendants prior to the accident, or that they were aware that it was in any respect out of order. At the time the accident occurred the plaintiff was riding upon the elevator from the sub-basement to the sidewalk, and when the platform had nearly reached the street level, it gave way or tipped to one side, letting the plaintiff fall to the bottom of the well-hole, breaking the bones of his thigh and arm, and otherwise severely injuring him.

" The elevator was suspended on two sides with chains which wound around two drums on a shaft at the bottom of the well-hole. A check-chain at the side of the well-hole controlled the motive power. The only defect that is claimed by the plaintiff to have existed at the time of the accident was in the suspending chains, which he claimed were longer than was necessary, and when the platform was at its lowest point, about a turn and a half of the chains still remained upon each drum, so that the shaft continued to revolve for some time after the platform reached its lowest point, and the drums continued to pay out the chains till they became slack. Then when the elevator was started up, the chains, being somewhat out of place, would wind irregularly around the drum, and, when the elevator was moving, this irregular winding of the chains caused them, or one of them, to slip over onto the shaft, tipping up the side of the elevator and causing the accident. There is no evidence in the case, however, to show that the defendants ever knew of this irregular winding of the chains. They furnished an elevator and equipments of the most approved kind and pattern for the purpose to which it was to be applied, and it was carefully looked after and inspected by the defendants, and also by the regular inspector of the manu-

facturer who furnished it. This was all that the law exacted from the master. To hold, upon this state of facts, that the defendants neglected any duty which they owed the plaintiff, would be to require of them extraordinary and unusual precautions. We think there was no evidence upon which the jury could properly find that the defendants were guilty of any negligence in furnishing the elevator or its equipment, or in providing for its proper inspection from time to time as was necessary in order to guard against accidents. (*Stringham* v. *Hilton*, 111 N. Y. 188; *Dobbins* v. *Brown*, 119 id. 188.) The plaintiff frequently rode upon the elevator, and it does not appear that he considered it at all unsafe, although he knew of the alleged defect in the winding of the chains around the drums, and which seems to have been due to the manner in which it was operated and used.

"The defendants, long before the accident, had caused a notice to be placed in a prominent place near the elevator, forbidding all persons from riding thereon. At one time the engineer notified the plaintiff that the rules forbid his riding on this elevator, and refused to allow him to do so. The plaintiff thereupon appealed to one of the defendants, who gave him permission to ride, and he continued to do so until the accident. While we do not think, as the case stands, that there was any evidence that the elevator or its equipments were unsafe or defective, in consequence of any want of care on the part of the defendants, yet, if it were otherwise, it is apparent that the plaintiff had the same means and opportunities for ascertaining the defects that the defendants had, and even better.

"For these reasons the judgment should be reversed and a new trial granted, costs to abide event."

*Joseph H. Choate* for appellants.

*Charles J. Patterson* for respondent.

O'BRIEN, J., reads for reversal and new trial.
All concur, except RUGER, Ch. J., not voting.
Judgment reversed.