### BENEDICT *v.* SCHEIDER.

*(Common Pleas of New York City and County, General Term. June 1, 1891.)*

MASTER AND SERVANT—DEFECTIVE MACHINERY—EVIDENCE.

Plaintiff was injured while in defendant's employ by the premature fall of the hammer of a tin-stamping machine which he was operating, and in the use of which he had been instructed by defendant's foreman. The machine was inspected every day, and there was no evidence that it was out of repair, either immediately before or after the accident. There was no evidence as to the cause of the fall of the hammer. *Held*, that there was no evidence of negligence on the part of defendant.

Appeal from city court, general term.

Action by Hyman Benedict against Joseph Scheider to recover damages sustained by plaintiff through the loss of the forefinger of his left hand, which was cut off by the sudden falling of a hammer attached to a machine at which plaintiff was employed in the factory of defendant. A judgment for plaintiff was affirmed by the general term of city court, and defendant again appeals. The following opinion *per curiam* (MCADAM, C. J., and EHRLICH and FITZSIMONS) was filed December 1, 1890: "The evidence was sufficient to carry the case to the jury. It went to them fairly. The verdict was moderate in amount, namely, $250. Taking the requests to charge in their entirety, we think the trial judge practically charged all the defendant requested to charge, and that the defendant was not prejudiced in any way by the refusal to charge the tenth request without modification, or in refusing altogether to charge the twefth request. Both are probably right as abstract propositions, and, as far as applicable, were sufficiently covered by the preceding requests, all of which were charged. Upon the entire case we think no injustice was done, and no error committed to the prejudice of the defendant. It follows that the judgment appealed from must be affirmed, with costs."

---

[1] Counsel cited on this point, *Cumber* v *Schoenfeld*, 12 N. Y. Supp. 282; *People* v. *Livingston*, 79 N. Y. 280.

Agued before DALY, C. J., and BISCHOFF and PRYOR, JJ.
*Maurice Rapp*, for appellant.   *Adolph L. Sanger*, for respondent.

BISCHOFF, J.   The most important of all duties which devolve upon the master by reason of the contractual relation is so to conduct his affairs to which the employment is incident that the servant is afforded all reasonable assurance of protection to life, health, and limb while he is engaged in the performance of his duties; and to that end the master will be held to the exercise of due care and caution in the selection of a place reasonably safe for the servant to work in, (*Kranz* v. *Railroad Co.*, 123 N. Y. 1, 25 N. E. Rep. 206;) of competent fellow-servants, (*Mann* v. *President, etc.*, 91 N. Y. 495;) and of implements and machinery reasonably safe and fit for the purposes for which they are intended to be used, (*Painton* v. *Railway Co.*, 83 N. Y. 7; *Murphy* v. *Railroad Co.*, 88 N. Y. 146; *Burke* v. *Witherbee*, 98 N. Y. 562; *Hickey* v. *Taaffe*, 105 N. Y. 26, 12 N. E. Rep. 286.)   It is likewise the duty of the master to instruct the servant touching risks in the use of machinery which are not obvious and apparent to any person of ordinary intelligence, and to exercise reasonable care and diligence in maintaining the machinery in proper condition and repair.   *Wright* v. *Railroad Co.*, 25 N. Y. 562.   Having exercised such reasonable care and diligence in the selection of competent fellow-servants and suitable machinery, and in maintaining the machinery in safe condition, the master is not thereafter to be regarded as insuring the servant against accidents arising from the negligence of fellow-servants or defective machinery, (*Murphy* v. *Railroad Co.*, 88 N. Y. 146; 1 Lawson, Rights, Rem. & Pr. § 302, and cases cited;) or against dangers which are obvious, (*Hart* v. *Naumburg*, 123 N. Y. 641, 25 N. E. Rep. 385;) for these will be deemed to have been accepted by the servant as among the risks of his employment.   The master's liability to his servant for injuries sustained by the latter rests in the personal negligence of the master, (*Wright* v. *Railroad Co., supra*;) and to support a charge of negligence it must appear that he failed to exercise reasonable care and diligence in the performance of a duty owing by him to the servant, or that he omitted entirely to perform that duty, (*Warner* v. *Railroad Co.*, 39 N. Y. 468.)   The mere happening of an accident, though shown to have been caused by the negligence of a fellow-servant, or by a defect in the machinery furnished, does not raise a presumption of negligence on the part of the master; and, in the absence of all evidence tending to establish the contrary, the master will be presumed to have performed the duties incumbent upon him.   *Cahill* v. *Hilton*, 106 N. Y. 512, 13 N. E. Rep. 339.   The burden of proof is therefore upon him who asserts the master's negligence as the foundation of his claim.   Deer. Neg. § 405; Shear. & R. Neg. § 12; Bailey, Onus Probandi, 216.

Now, considering the facts of the case before us, as they were developed on the trial, with reference to the duties of the defendant towards the plaintiff growing out of the contractual relation between them, and as above defined, do they in any degree tend to establish the defendant's negligence?   The evidence for the plaintiff, being the testimony of himself and a witness, Cohen, shows that prior to his employment by defendant he was a tinsmith of 26 years' experience; that he was received in defendant's employ in August, 1883, and put to work on a machine for "stamping" tins, in the use of which he was first instructed by defendant's foreman, Hamburger; that he had "cut out" several thousand tins, and operated the machine for about a week, when the accident resulting in the injuries to his hand occurred; that the accident occurred in the unforeseen descent of a heavy weight or "hammer," as it is called, while he was engaged in arranging tins upon the die immediately under the "hammer;" that, attached to the "hammer," was a treadle, to be operated by placing a foot thereon, and that by means of this treadle the "hammer" was caused to descend; that he did not know what caused the "hammer" to

descend when the accident occurred; that he did not have his foot on the treadle, and could not say that the machine was in need of repair. Plaintiff further says that simultaneously with the happening of the accident to him he had observed that the belt attached to the "hammer," and by means of which it was caused to ascend, had become loosened, but how the loosening of the belt could have occasioned the accident we are left to conjecture. Cohen knew of no repairs required upon the machine after the accident. He also stated that about three months before another employe was injured while engaged in the operation of the same machine, but how—whether because of some defect or want of repair, the negligence of the person injured or of a fellow-servant, or otherwise—does not appear. Upon this evidence defendant moved to dismiss the complaint, and we think the motion should have been granted. Waiving, however, the validity of defendant's exception to the denial of the motion, and searching the evidence subsequently introduced, as we may do, (*Painton* v. *Railway Co.*, 83 N. Y. 7,) to supply the defect in plaintiff's proof, we fail to find therein anything upon which negligence of the defendant can be predicated, directly or inferentially. The subsequent evidence is made up entirely of the testimony of defendant's witnesses Cole, Alexander, Saling, and the defendant. Cole described the machine as consisting of an anvil, fastened to which was a die. Attached to the die were two upright slides, in which the "hammer" ascended and descended. The "hammer" was raised by means of the belt, to which it was attached, and when raised to the proper height was securely held by "catches" projecting from the slides, which could only be withdrawn by operating the treadle, thus causing the "hammer" to fall of its own weight. Cole further says that the machine was inspected and examined daily; that it was in good order on the day of the accident, and was so immediately after the accident, when it was again operated without the need of repairs. He also explained that the accident to a former employe was the result of the injured person's own carelessness. Alexander says that on the very day of and before the accident he explained the use of the machine to plaintiff, and that immediately after the accident he operated it, and found it in good working order. He further stated that it was not in need of repair, either before or after the accident. Saling's and defendant's testimony is mainly corroborative of Cole's. What is there in this evidence to charge defendant with negligence? Does it show or tend to show that defendant did not select competent fellow-servants, or provide implements and machinery which were reasonably safe, considering the exigencies and hazard of the business in which they were required? Does it show or tend to show that the accident was caused by some hidden danger, to which plaintiff's attention had not been directed, or that it was due to some latent defect or impaired condition of which defendant had knowledge, or of which he could have had knowledge had he exercised reasonable care and diligence? Does it show or tend to show that the defendant was remiss in his duty to cause frequent inspections of the machinery with a view of remedying discoverable defects, and thus insure the safety of his servants? If not, then wherein did defendant's alleged negligence consist? Candid consideration of the evidence leads irresistibly to the conclusion that the injuries sustained by the plaintiff were either the result of his own carelessness or unavoidable accident, for neither of which defendant should be held answerable, and that the case is destitute of every element of negligence imputable to the defendant. It was error, therefore, to submit the question of defendant's negligence to the jury, and to refuse to dismiss the complaint. The judgment and order appealed from must be reversed, and a new trial ordered, with costs to abide the event. All concur.